Robert M. Carlson
CORETTE BLACK CARLSON & MICKELSON
129 West Park Street
Butte, MT  59703
(406) 782-5800
bcarlson@cpklawmt.com

Dale G. Wills (*pro hac vice*)
Andrew A. Lothson (*pro hac vice*)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash, Ste. 3300
Chicago, IL  60611
(312) 321-9100
dwills@smbtrials.com
alothson@smbtrials.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| SHARON TEAGUE and RANDALL TEAGUE, Individually, and in their official capacity as Co-Personal Representatives of the ESTATE OF MARK RANDALL TEAGUE, | ) ) ) ) ) | Case No:  9:18-cv-00184 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REMINGTON ARMS COMPANY, LLC; REMINGTON OUTDOOR COMPANY, INC.; SPORTING GOODS PROPERTIES, INC.; E.I. DE PONT DE NEMOURS & COMPANY; DOES A to K, | ) ) ) ) ) ) | **DEFENDANTS' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** |
| | ) | |
| Defendants. | | |

Defendants, REMINGTON ARMS COMPANY, LLC (hereinafter "Remington"), REMINGTON OUTDOOR COMPANY, INC., SPORTING GOODS PROPERTIES, INC. ("SGPI"), and E.I. DU PONT DE NEMOURS AND COMPANY (collectively "Defendants"), by their undersigned attorney, answer Plaintiffs' Complaint as follows:

## PRELIMINARY STATEMENT

Plaintiffs' Complaint violates FRCP 8(a)(1) in that it does not contain "a short and plain statement of the claim showing that the pleader is entitled to leave." For example, the allegations and characterizations in Paragraphs 41-81 of the Complaint referring to portions of alleged documents and historical materials are inaccurate, misleading, taken out of context and unnecessary to Plaintiffs' claims. Defendants otherwise answer Plaintiffs' Complaint as follows:

1.      Defendants admit that Mark Teague fatally shot himself on November 3, 2015 while seated in a chair in his family home. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1.

2.      Defendants admit that Model 721 and Model 722 rifles incorporated a trigger mechanism or fire control referenced in U.S. Patent No. 2,514,981 were introduced in 1948. Defendants admit that the subject Model 700 rifle had a trigger

mechanism sometimes referred to as a Walker fire control.  Defendants deny the remaining allegations of Paragraph 2.

3.      Defendants admit that millions of Model 700 rifles have been sold and that it has been and continues to be one of the most popular and reliable bolt-action rifles ever produced.  Defendants deny that Model 700 rifles with Walker fire controls are defective, unreasonably dangerous or unsafe.  Defendants deny the remaining allegations of Paragraph 3.

4.      Defendants admit that the Plaintiffs, as co-personal representatives for the Estate of Mark Teague, have filed a lawsuit based on Mark Teague's death. Defendants deny the remaining allegations of Paragraph 4.

5.       Defendants admit that Mark Teague fatally shot himself on November 3, 2015 while seated in a chair in his family home.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 5.

6.      Defendants admit that Remington is a Delaware limited liability company with its principal place of business in North Carolina and that it is not a citizen of Montana but does business in Montana.  Defendants deny the remaining allegations of Paragraph 6.

7.      Defendants admit that Remington Outdoor Company, Inc. ("ROC") is a Delaware corporation with its principal place of business in North Carolina and

that it is not a citizen of Montana.  Defendants deny the remaining allegations of Paragraph 7.

8.    Defendants admit that SGPI is a Delaware Corporation with its principal place of business in Delaware.  Defendants deny the remaining allegations of Paragraph 8.

9.    Defendants admit that E.I. du Pont de Nemours & Company ("DuPont") is a Delaware Corporation with its principal place of business in Delaware and that it is not a citizen of Montana but does business in Montana. Defendants deny the remaining allegations of Paragraph 9.

10.    The allegations of Paragraph 10 are legal conclusions which do not require an answer.  To the extent an answer is required, Defendants deny the allegations of Paragraph 10.

11.    Defendants admit that SGPI designed, manufactured, assembled, tested and sold the Model 700 rifle alleged used by Mark Teague to fatally shoot himself. Defendants admit that Remington is now engaged in designing, manufacturing, assembling, testing, marketing and selling firearms.  Defendants deny the remaining allegations of Paragraph 11.

12.    Defendants admit that prior to November 30, 1993, DuPont owned 100% of the stock of the company then known as "Remington Arms Company, Inc." and now known as "Sporting Goods Properties, Inc." Defendants admit that on or

4

about November 30, 1993, Remington Arms Acquisition Corporation, Inc. purchased from DuPont and SGPI substantially all of the income-producing assets of the Remington business, including the corporate name. Defendants deny the remaining allegations of Paragraph 12.

13.     Defendants deny the allegations of Paragraph 13.

14.     Defendants admit the existence of the Asset Purchase Agreement, the terms of which speak for themselves.  Defendants deny the remaining allegations of Paragraph 14.

15.     Defendants admit the existence of the Asset Purchase Agreement, the terms of which speak for themselves.  Defendants deny the remaining allegations of Paragraph 15.

16.     Defendants admit that Remington Arms Company, LLC is engaged in commerce within this juridical district, including advertising, marketing and sale of Model 700 rifles. Defendants admit that Sporting Goods Properties, Inc. was, prior to December 1, 1993, engaged in commerce within this juridical district, including advertising, marketing and sale of Model 700 rifles. Defendants deny the remaining allegations of Paragraph 16.

17.     Defendants admit that they are completely diverse from the Plaintiffs and that the amount in controversy exceeds $75,000.  The extent that this paragraph contains Plaintiffs' legal conclusions, no response is required.

18.     Defendants admit that this Court has personal jurisdiction over the Defendants.  Defendants deny the remaining allegations of Paragraph 18.

19.     Defendants admit that venue is proper in this district and division. Defendants deny the remaining allegations of Paragraph 19.

20.     Defendants admit that Plaintiffs allege they were citizens of Montana. The extent that this paragraph contains Plaintiffs' legal conclusions, no response is required.  To the extent a response is required, Defendants deny the remaining allegations of Paragraph 20.

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26.

27.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.

28.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28 regarding Mark Teague and his family's knowledge about Model 700 rifles.  Defendants deny the remaining allegations in Paragraph 28, including that the subject rifle was defective, unreasonably dangerous or unsafe in any way and that it could fire without a trigger pull.

29.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29.

30.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30.

31.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31.

32.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32.

33.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33.

34.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34.

35.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35.

36.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36.

37.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37.

38.    Defendants admit that the so-called "Walker" fire control was originally designed by Merle "Mike" Walker and contained a component called the "trigger connector."  Defendants deny that the description of function of a connector-based fire control is accurate and complete.   Defendants deny that the so-callled "Walker" fire control is unreasonably dangerous, defective, or unsafe.  Defendants deny the remaining allegations of Paragraph 38.

39.    Defendants deny the allegations of Paragraph 39.

40.    Defendants deny the allegations of Paragraph 40.

41.    Defendants admit that a patent application by Merle Walker and Phillip Haskell included the quoted sentences in Paragraph 41.  Defendants deny that the allegations of Paragraph 41 accurately and in proper context describe the patent application.  Defendants deny the remaining allegations of Paragraph 41.

42.    Defendants deny the allegations of Paragraph 42.

43.     Defendants admit that a 1956 document included the quoted language in Paragraph 43.  Defendants deny that the allegations of Paragraph 43 accurately and in proper context describe the document.  Defendants deny the remaining allegations of Paragraph 43.

44.     Defendants deny the allegations of Paragraph 44.

45.     Defendants deny the allegations of Paragraph 45.

46.     Defendants deny the allegations of Paragraph 46.

47.     Defendants admit that certain entities sell after-market trigger mechanisms for Model 700 rifles and that certain of those mechanisms do not incorporate a "trigger connector." Defendants deny the remaining allegations of Paragraph 47.

48.     Defendants admit that Merle "Mike" Walker testified at deposition in January of 2011 that the fire control mechanism he designed for use in Model 700 rifles was safe and reliable for all intended and reasonably foreseeable uses. Defendants deny the allegations of Paragraph 48.

49.     Defendants admit that in approximately 2006 Remington introduced a fire control called the X-Mark Pro, which is not a connector-based fire control. Defendants deny the remaining allegations of Paragraph 49.

50.     Defendants deny that the "Walker" fire control and the Model 700 rifle are defective or unreasonably dangerous in any way.  Defendants deny the remaining allegations of Paragraph 50.

51.     Defendants admit that the Barber family settled a lawsuit involving a Model 700 rifle in 2002, that Remington designed a fire control mechanism known as the X-Mark Pro, which it began incorporating in certain rifles in 2006, and that connector-based fire controls have been installed on some rifles after 2006. Defendants deny the remaining allegations of Paragraph 51.

52.     Defendants admit that beginning in 1948, SGPI manufactured Model 721 and Model 722 rifles incorporating a trigger mechanism or fire control referenced in Patent No. 2,514,981.   Defendants admit that Model 700 rifles manufactured by SGPI and Remington since 1962 incorporated varying iterations of the Model 700 fire control that was originally designed by Merle "Mike" Walker. Defendants deny the remaining allegations of Paragraph 52.

53.     Defendants admit that millions of Model 700 rifles with the so-called "Walker" fire control have been manufactured and sold.  Defendants deny that Model 700 rifles incorporating the so-called "Walker" fire control are defective, unreasonably dangerous or unsafe.  Defendants deny the remaining allegations of Paragraph 53.

54.    Defendants admit that SGPI and Remington received written and oral communications from persons alleging accidental discharges of Model 700 rifles with "Walker" fire controls.   Defendants' deny the remaining allegations of Paragraph 54.

55.    Defendants admit the existence of the referenced Consumer Reports article, the contents of which speak for itself.  Defendants deny that the allegations of Paragraph 55 accurately or in context describe the article.  Defendants deny the remaining allegations of Paragraph 55.

56.    Defendants admit the fact of the settlement of a lawsuit filed on behalf of John Coates involving a Model 600 series rifle and the fact of a subsequent recall of Model 600 rifles.  Defendants admit that SGPI manufactured and sold fewer Model 600 rifles than Model 700 rifles and that Model 600 rifles utilized a fire control mechanism with a component part referred to as a "trigger connector." Defendants deny the remaining allegations of Paragraph 56.

57.    Defendants deny the allegations of Paragraph 57.

58.    Defendants deny the allegations of Paragraph 58.

59.    Defendants deny the allegations of Paragraph 59.

60.    Defendants admit that SGPI and Remington at times undertook firearms and trigger mechanism design projects for various product lines, including for bolt-action centerfire rifles.  Defendants admit the existence of the referenced

internal document which speaks for itself but deny that the document are characterized accurately or in proper context in Paragraph 60. Defendants deny the remaining allegations of Paragraph 60.

61.    Defendants admit the existence of internal the referenced document which speaks for itself but deny that the documents are characterized accurately or in proper context in Paragraph 61. Defendants deny the remaining allegations of Paragraph 61.

62.    Defendants deny the allegations of Paragraph 62.

63.    Defendants admit that SGPI and Remington at times undertook firearms and trigger mechanism design projects for various rifle and shotgun product lines, including for bolt-action centerfire rifles. Defendants admit the existence of the referenced internal documents which speak for themselves but deny that the documents are characterized accurately or in proper context in Paragraph 63. Defendants deny the remaining allegations of Paragraph 63.

64.    Defendants admit the fact and amount of the 1994 jury verdict, which was later reduced by the trial court before the parties settled the action. Defendants admit the existence of the referenced Remington document, which speaks for itself, but deny that the document is characterized accurately or in proper context in Paragraph 64. Defendants deny the remaining allegations of Paragraph 64.

65.     Defendants admit the existence of the referenced document, which speaks for itself, but deny that the document is characterized accurately or in proper context in Paragraph 65. Defendants deny the remaining allegations of Paragraph 65.

66.     Defendants admit the existence of the referenced document, which speaks for itself, but deny that the document is characterized accurately or in proper context. Defendants deny the remaining allegations of Paragraph 66.

67.     Defendants admit Robert Haskin testified in the referenced deposition, and that the transcript of that deposition speaks for itself, but deny that the testimony is characterized accurately or in proper context in Paragraph 67. Defendants deny the remaining allegations of Paragraph 67.

68.     Defendants deny the allegations of Paragraph 68.

69.     Defendants admit the existence of the report from H.P. White Laboratory, which speaks for itself, but deny that the allegations of Paragraph 69 accurately or in proper context characterize that material.  Defendants deny the remaining allegations of Paragraph 69.

70.     Defendants admit that in about 2000 Remington introduced a new rifle known as the Model 710 and that Remington designed a new fire control mechanism for that rifle. Defendants deny the remaining allegations of Paragraph 70.

71.    Defendants admit the existence of the referenced document, which speaks for itself, but deny that the document is characterized accurately or in proper context in Paragraph 71. Defendants deny the remaining allegations of Paragraph 71.

72.    Defendants admit the existence of the referenced material, which speaks for itself, but deny that the material is characterized accurately or in proper context. Defendants deny the remaining allegations of Paragraph 72.

73.    Defendants admit that Remington introduced the Model 710 rifle in about 2000 and admit the existence of Model 710 developmental testing documents but deny that the referenced documents are characterized accurately or in proper context. Defendants deny the remaining allegations of Paragraph 73.

74.    Defendants admit that in 2002 Remington implemented a safety modification program offering owners of pre-1982 Model 700 rifles the option to have the bolt-lock feature on such rifles removed. Defendants deny that Model 700 rifles, including the rifle involved in the Barber incident, are defective, unreasonably dangerous or unsafe.  Defendants deny the remaining allegations of Paragraph 74.

75.    Defendants admit that in 2002 Remington implemented a safety modification program which was not a recall and which offered owners of pre-1982 Model 700 rifles the option to have the bolt-lock feature on such rifles removed. Defendants deny that Model 700 rifles, including those with the bolt-lock feature,

are defective, unreasonably dangerous or unsafe.  Defendants deny the remaining allegations of Paragraph 75.

76.    Defendants deny the allegations of Paragraph 76.

77.    Defendants admit the fact that a cable television show produced by CNBC entitled "Remington Under Fire" first aired in October 2010 and included segments of an interview of Mike Walker.  Defendants deny the remaining allegations of Paragraph 70, including the substance of the CNBC program.

78.    Defendants admit that Remington and SGPI concluded that some alleged accidental discharges of firearms have been the result of poor maintenance and unsafe gun handling sometimes by inexperienced users, and that Remington provided a written statement to CNBC before the program aired, which speaks for itself.  Defendants deny the remaining allegations of Paragraph 78.

79.    Defendants admit that Remington responded to the CNBC program, including on http://remington700.tv, an Official Statement for CNBC Program Regarding the Model 700, and a Point-by-Point Response, and that Remington's responses speak for themselves. Defendants deny the remaining allegations of Paragraph 79.

80.    Defendants deny the allegations of Paragraph 80.

81.     Defendants admit that lawsuits have been filed against the Defendants alleging accidental discharges of Remington bolt-action rifles. Defendants deny the remaining allegations of Paragraph 81.

COUNT ONE
STRICT LIABILITY IN TORT

82.     Defendants repeat and incorporate by reference their answers as set forth in the foregoing Paragraphs as if set forth fully herein.  Defendants deny any new allegations  made in Paragraph 82 that were not previously alleged by Plaintiffs in the foregoing paragraphs.

83.     Paragraph 83 sets forth legal conclusions to which no response is required.  To the extent a response is required, Defendants admit to any obligations and duties owed under applicable law but deny that they have breached any such obligations and duties and further deny that the allegations of Paragraph 83 accurately set forth such obligations and duties.

84.     Defendants deny that the subject rifle was defective or unreasonably dangerous in any way and further deny the remaining allegations of Paragraph 84.

85.     Defendants deny the allegations of Paragraph 85.

86.     Defendants deny the allegations of Paragraph 86.

87.     Defendants deny the allegations of Paragraph 87.

88.     Defendants deny the allegations of Paragraph 88, including Subparts A through D thereof.

16

WHEREFORE, Defendants deny that Plaintiffs are entitled to judgment against any of them in any amount whatsoever and request that Plaintiffs' Complaint be dismissed in its entirety with prejudice, at Plaintiffs' cost.

COUNT TWO
PUNITIVE DAMAGES

89.    Defendants repeat and incorporate by reference their answers as set forth in the foregoing paragraphs as if set forth fully herein.

90.    Defendants deny the allegations of Paragraph 90.

91.    Defendants deny the allegations of Paragraph 91.

92.    Defendants deny the allegations of Paragraph 92.

93.    Defendants deny the allegations of Paragraph 93.

WHEREFORE, Defendants deny that Plaintiffs are entitled to judgment against any of them in any amount whatsoever and request that Plaintiffs' Complaint be dismissed in its entirety with prejudice, at Plaintiffs' cost.

**JURY DEMAND**

Defendants hereby demand a jury for any genuine issue of material fact.

## **AFFIRMATIVE DEFENSES**

As and for its affirmative defenses to Plaintiffs' Complaint, Defendants state as follows:

1.     Plaintiffs' Complaint fails in whole or in part to state a claim upon which relief can be granted.

2.     Plaintiffs' alleged injuries and damages were proximately caused by the reckless, volitional, intentional and/or criminal acts of Mark Teague.  This conduct was the sole proximate cause of Mark Teague's death, and Defendants have immunity for any claims of defect under 15 U.S.C. § 7903(5)(A)(v).

3.     Plaintiffs' Complaint is barred by the provisions of Mont. Code Ann. § 27-1-719(5)(a) and § 27-1-719(5)(b).

4.     The alleged injuries or damages to Plaintiffs, if any, were caused by acts or omissions of other persons or entities, including Mark Teague, who were not under the control of Defendants and for whose conduct Defendants are not responsible.

5.     The alleged injuries and damages of the Plaintiffs, if any, were proximately caused by the misuse, abuse, alteration, and/or failure to properly maintain or care for the subject rifle by persons other than Defendants.

6.     Defendants complied with any and all obligations under Montana law.

7.      Defendants Remington Arms Company, LLC, Remington Outdoor Company, Inc., and DuPont did not manufacture or sell the subject rifle.  SGPI is not liable because the firearm involved in the shooting was reasonably safe for the purpose for which was intended, and it was not defective and unreasonably dangerous when it left SGPI's control.

8.      Plaintiffs' claims for punitive damages are barred by the Equal Protection, Due Process, Excessive Fines and Double Jeopardy provisions of the United States and Montana Constitutions.

9.      Defendants were not egregious, willful, grossly negligent, fraudulent, acting with actual malice, or reckless and they cannot be liable or responsible for exemplary or punitive damages. Defendants also plead the existence of any available state or federal statutory caps on exemplary or punitive damages.

10.      Any award of exemplary or punitive damages against Defendants based on conduct outside of this jurisdiction would impose unreasonable state limitations on interstate commerce in violation of the Commerce Clause of the United States Constitution and would be in violation of the United States Supreme Court's holding in *State Farm v. Campbell*, 538 U.S. 408 (2003).  The United States Supreme Court has held that a State has no legitimate interest in punishing conduct that took place outside the State's borders, that was "lawful where it occurred" and that "had no

impact" on the State seeking to impose the punishment. *BMW of North America Inc. v. Gore*, 517 U.S. 559, 572 (1996).

11.   Exemplary or punitive damages may not be awarded against Defendants:

    a.   Without proof of every element beyond a reasonable doubt, or in the alternative, without proof by clear and convincing evidence;

    b.   Without bifurcating, trifurcating or otherwise severing the trial of all exemplary or punitive issues, including exemplary or punitive liability;

    c.   With no limits, including no maximum amount that a jury may impose in this jurisdiction;

    d.   With no limits, including the constitutional prohibition against exemplary or punitive damages awards being greater than a single-digit multiplier of any compensatory award, *see State Farm v. Campbell*, 538 U.S.408 (2003);

    e.   Which improperly compensates Plaintiffs for elements of damage not otherwise recognized under the laws of this jurisdiction;

    f.   Without standards of sufficient clarity for determining the appropriateness or appropriate size of the award;

g. Without consideration of the three constitutional guideposts of reprehensibility, ratio, and civil penalties, *see State Farm v. Campbell*, 538 U.S.408 (2003);

h. Without appropriate instructions on the limits of exemplary or punitive damages imposed by the applicable standards of deterrence and punishment; and

i. Under a vague and arbitrary standard that does not define the necessary conduct or mental state required for exemplary or punitive damages.

12.    A "total revenues" analysis of profits derived from the sale of a product flouts the United States Supreme Court's ban on extraterritorial punishment, interferes with the policy choices of other States and the federal government and imposes undue burdens on interstate commerce in violation of both the Due Process Clause and the Commerce Clause, *BMW of North America, Inc. v Gore*, 517 U.S. 559, 571-572 (1996).

13.    The United States Supreme Court has rejected the constitutionality of a punitive damages award which was determined by using the defendant's wealth as a guidepost.  *BMW of North America, Inc. v Gore*, 517 U.S. 559, 585 (1996).

14.    Montana has no more right under the Constitution to calculate punitive damage awards based on Defendants' profits from sales in other jurisdictions than it does to impose a sales tax on such out-of-state sales.  *See Moorman Mfg. Co. v. Bair*,

437 U.S. 267, 273 (1978).  "The principle that a State may not tax value earned outside its borders rests on the fundamental requirement of both the Due Process and Commerce Clauses that there be 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'"  *Allied-Signal, Inc. v. Director, Div. of Taxation*, 504 U.S. 768, 777 (1992) (invalidating New Jersey's taxation of gain on out-of-state sale of asset) (quoting *Miller Bros. Co. V. Maryland*, 347 U.S. 340, 344-45 (1945)).  *See also Norfolk & W. R. Co. v. Missouri State Tax Comm'n*, 390 U.S. 317, 325 (1968) (invalidating application of Missouri tax apportionment statute to railroad's rolling stock); *Hans Rees' Sons, Inc. v. North Carolina*, 283 U.S. 123, 133-35 (1931) (invalidating application of North Carolina tax apportionment statute to New York manufacturer of leather goods).

15.    Any calculation or award of exemplary or punitive damages against Defendants based in whole or in part upon the their alleged conduct toward nonparties is unconstitutional and constitutes a taking of their property without due process. *Phillip Morris v. Williams*, 127 S.Ct. 1057 (2007).

16.    Plaintiffs' injuries and damages, if any, were not caused by any acts or omissions of Defendants.

17.    Plaintiffs' injuries and damages, if any, were caused by the superseding, intervening conduct of persons or entities other than Defendants, including the superseding intentional conduct of Mark Teague in committing suicide.  Because of

such superseding cause, Defendants are not liable to Plaintiffs on any the claims asserted in the Complaint.

18.     In the event Plaintiffs have received or may receive payments from a collateral source as a result of any claimed injuries, in whole or in part, for which Plaintiffs seek damages herein, Plaintiffs' recovery should be reduced by any amount paid or payable by such collateral source pursuant to Mont. Code Ann. § 27-1-308.

19.     Plaintiffs' claims should be barred or reduced by their failure to take reasonable care to minimize alleged damages or to mitigate damages.

20.     Any injuries, losses or damages allegedly suffered by Plaintiffs were caused or contributed to by the acts or omissions of other persons or entities and the recovery, if any, against Defendants must be reduced in proportion to the amount of fault attributable to such other persons or entities.

21.     Neither Plaintiffs' claimed injuries and damages, if any, nor the conduced of Mark Teague in committing suicide were reasonably foreseeable to Defendants so as to create any liability to Plaintiffs on any of the claims asserted in the Complaint.

22.     Defendants give notice that they intend to rely upon such other and further defenses as may become available or apparent to them during discovery and reserve the right to amend this Answer to assert any such defenses.

WHEREFORE, Defendants, REMINGTON ARMS COMPANY, LLC REMINGTON OUTDOOR COMPANY, INC., SPORTING GOODS PROPERTIES, INC., and E.I. DU PONT DE NEMOURS AND COMPANY, deny that Plaintiffs are entitled to judgment against any of them in any amount whatsoever and request that Plaintiffs' Complaint be dismissed in its entirety with prejudice, at Plaintiffs' costs.

DATED this 25th day of April, 2019

Respectfully submitted,

*/s/ Robert M. Carlson*
Robert M. Carlson
Corette Black Carlson & Mickelson
129 West Park Street
Butte, MT 59703
(406) 782-5800
bcarlson@cpklawmt.com

*/s/ Andrew A. Lothson*
Dale G. Wills (PHV)
Andrew A. Lothson (PHV)
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
312) 321-9100
(312) 321-0990 – Fax
dwills@smbtrials.com
alothson@smbtrials.com

**Attorney for the Defendants**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 25, 2019, I electronically transmitted the

foregoing document to the Clerk of Court using the ECF System for filing. The

Clerk of Court will transmit a Notice of Electronic Filing to all ECF registrants.

*/s/ Andrew A. Lothson*
Dale G. Wills
Andrew A. Lothson
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL  60611
312) 321-9100
(312) 321-0990 – Fax
dwills@smbtrials.com
alothson@smbtrials.com


**Attorney for the Defendants**
