IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHARON TEAGUE and RANDALL TEAGUE, Individually, and in their official capacity as Co-Personal Representatives of the ESTATE OF MARK RANDALL TEAGUE,<br><br>Plaintiffs,<br><br>vs.<br><br>REMINGTON ARMS COMPANY, LLC, REMINGTON OUTDOOR COMPANY, INC., SPORTING GOODS PROPERTIES, INC., E.I. DU PONT DE NEMOURS & COMPANY, DOES A TO K,<br><br>Defendants. | CV 18–184–M–DLC<br><br>ORDER |

Plaintiffs Sharon Teague and Randall Teague (collectively, the "Teagues") have filed a motion to compel discovery. (Doc. 44.) They ask the Court to order Defendants (collectively, "Remington") "to produce documents and answer without objection" their: (1) Interrogatories 1 through 4; (2) Requests for Production 88 through 101; and (3) Requests for Admission 2 through 8.

The Teagues contend that Remington has been withholding documents from plaintiffs' attorneys for decades. They further suggest that various Remington

-1-

defense attorneys—including counsel in this case—share culpability for a pattern of nondisclosure over the same course of time. Remington counters that it has produced all responsive documents within the scope of discovery and that the Teagues' motion is an attempt to expand their lawsuit far beyond the four corners of the Complaint.

The Court grants the motion in small part and otherwise denies it. While the Court notes that there is a historic record supporting some of the Teague's allegations, that record is not enough for the Court to order production of documents that may not exist and are not especially relevant to this specific case.

## RELEVANT BACKGROUND

On November 3, 2015, the Teagues' teenage son, Mark, was getting ready for school in the family's home in Seeley Lake, Montana. His Remington Model 700 Series hunting rifle had been left standing against the wall in the living room, loaded, and he carried it with him to his chair. While the rest of the family was going about their morning rituals, the gun fired. Mark died instantly.

The dispute between the parties boils down to the question of whether the firing was intentional or the result of a defective product design. More specifically, the Teagues allege that the trigger assembly, called the "Walker fire control," was defectively designed and that the gun discharged even though the trigger was not pulled. The Court previously denied Remington's motion to

-2-

dismiss, finding that the Teagues plausibly alleged that Mark's death was not suicide. (Doc. 22.)

The Teagues' legal team has changed since the case was filed. Their previous attorneys represented them through much of the pretrial proceedings, including at the June 5, 2019 preliminary pretrial conference. (*See* Doc. 34.) At the conference, the attorneys involved on behalf of both parties represented that discovery in this case would be focused and fairly minimal. (Docs. 45-4 at 3, 45-5 at 3.)

Notably, the Teagues' attorneys were already in possession of voluminous discovery from previous Model 700 defect cases, and the parties previously stipulated that "those materials can be used as if produced in this case." (Doc. 30 at 2–3.) They further represented that fact and expert discovery would be focused to "the product at issue, the circumstances of the shooting incident that forms the basis of the lawsuit, liability, and damages." (Doc. 30 at 2.) And they stated that there were no "[i]ssues about claims of privilege." (Doc. 30 at 3.) Although the Teagues' current legal team has access to the same materials, the Teagues now seek discovery beyond what the parties anticipated early in this proceeding.

In addition to the pending motion, the Teagues recently filed a motion to compel compliance with their Rule 30(b)(6) deposition notice. (Doc. 58.) Also

before the Court are the parties' cross-motions for summary judgment (Docs. 39 & 53) and Remington's motion to exclude certain opinions of the Teagues' expert (Doc. 42).

## LEGAL STANDARD

District courts have broad discretion over case management, including rulings on discovery disputes. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). A party may move to compel disclosure when it is unable to access information through its discovery requests. Fed. R. Civ. P. 37(a)(2)(A). "The moving party bears the burden of showing that the discovery sought is 'relevant' . . . , and the party resisting discovery bears the burden of showing that nondisclosure is appropriate." *Cintron v. Title Fin. Corp.*, 9:17-cv-108-M-DLC, 2018 WL 6605901, at *1 (Dec. 17, 2018).

> The scope of discovery extends to all nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). For purposes of discovery, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). A court

may act to limit unreasonably cumulative, overbroad, unduly burdensome, or irrelevant discovery. Fed. R. Civ. P. 26(b)(2)(c).

## DISCUSSION

This is not a typical discovery dispute. The documents sought are decades old and, as far as the Court can tell, have never been produced. They may not exist now, and they may never have existed. The brief in support of the Teagues' motion to compel reads less like an ordinary discovery motion than like a summary judgment brief addressing a cause of action for spoliation.

The information sought is not particularly likely to prove or disprove the Teagues' underlying theory of the case; rather, it appears that the Teagues' requests are calculated to secure decades of evidence of corporate wrongdoing. While it is conceivable that responsive documents and information could be used to bolster the Teague's claim for punitive damages, the Court notes that the evidence is not vital to that claim—there is no indication that the Teagues would be otherwise unable to support their claims that Remington was aware of and failed to disclose evidence of a dangerous defect.

All of the information sought relates to events that occurred between 25 and 50 years ago, and the discovery requests are broken into two categories by the parties. The first category seeks materials allegedly compiled in 1995, when a Remington executive issued what the parties refer to as the "Suspension Order," an

order to save all documents related to potential defects in several Remington products, including the Remington Model 700 series. (Doc. 45 at 22–24.) The second category targets information and materials similar to known documents from the 1970s and 1980s. (Doc. 45 at 24–30.)

Before analyzing the merits of the Teague's requests as to each of these two categories, the Court addresses a threshold issue—whether the motion to compel should be granted because Remington failed to adequately object to the Teague's discovery requests.

## I. Remington's Objections

The Teagues argue that their motion should be granted because Remington failed to meet its burden to provide adequate objections to their discovery requests. More specifically, they claim that Remington: (1) made boilerplate objections; (2) gave incomplete responses; and (3) failed to identify withheld documents.

"The burden lies on the objecting party to show that discovery request is improper. Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden." *Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652, 656–57 (D. Mont. 2018). The Advisory Committee has made clear that a party cannot evade discovery "simply by making a boilerplate objection that it is not proportional." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

The Court finds that Remington provided adequately detailed and specific objections, particularly in consideration of the broader context and pattern of discovery in this case. It made clear the bases for its objections, alleviating the primary concern raised by boilerplate objections. *See, e.g.*, *United States v. HVI Cat Canyon, Inc.*, 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016). Remington stated that it objected to the requests at issue because it had already produced all responsive documents within its control, consistent with the parties' prior agreements. (Doc. 45-5 at 3–10.) It also objected to certain requests on various grounds, including privilege, overbreadth, and duplicative requests.

Attorneys for both parties are specialists in Model 700 Series litigation, and Remington has agreed to the use of documents produced in other litigation, many of which have also been compiled and made available to the public at http://www.remingtondocuments.com. Further, the defense attorneys and the Teagues' previous attorneys appeared to work through discovery issues rather informally and collaboratively, over email and "[i]n lieu of responding to a specific Federal Rule of Civil Procedure 34 request for production from the Plaintiffs." (*See, e.g.*, Doc. 49-4 at 2–3.) In June of 2019, the Teagues agreed that the Defendants would instead:

> search for and produce in searchable PDF form any records including electronic data from the documents compiled by the law firm of Snell & Wilmer in the shotgun barrel burst litigation that relate to the Model

-7-

> 700 and firearms with any connector-based trigger mechanisms, alternative or modified trigger or fire control designs or safety engineering whether or not connector-based or considered for use in the Model 700 including but not limited to the X-Mark Pro trigger ("XMP"), firings without a trigger pull, firings on bolt closure or after release or engagement of the safety, warnings and instructions regarding triggers, fire controls, safeties or firings without a trigger pull that defendants issued to or considered for users, and testing, modification, redesign or evaluation by defendants or any third parties of trigger assemblies and fire control systems whether or not they are alternative designs or connector-based, safety mechanisms, bolt cycling, and bolt-lock mechanisms. It is further agreed that defendants will not withhold from production responsive information except for claims of privilege, that defendants will comply with the Federal Rules of Civil Procedure except that defendants are afforded seven (7) days from production of responsive documents to serve plaintiffs with a compliant privilege log if privilege is claimed, that defendants will produce to plaintiffs responsive records prior to August 19, 2019, and that this agreement is amendable in writing by agreement of the parties.

(Doc. 49-4 at 3.)

After the Teagues' current attorney stepped into this case in early 2020, they served upon Remington the Plaintiffs' Second Discovery Requests (45-5), which are at issue in this case. As noted in its preliminary statement to the Teagues' Second Discovery Requests, some of the requests were duplicative of prior efforts within the case. Remington wrote that "[t]o the extent that Plaintiffs' proposed discovery seeks necessary and discoverable information, the information is already known and readily available to Plaintiffs' counsel from other prior litigation." (Doc. 45-5 at 2.) Remington referred to the parties' Joint Discovery Plan and pointed to the significant body of documents available from the litigation of prior

-8-

cases, explaining why it knew that these documents were within the Teagues' possession. Under the circumstances, the Court cannot agree that Remington made only boilerplate, nonspecific objections.

The Teagues also argue that the Court should grant its motion on the basis of Remington's noncompliance with Rule 34(b)(2)(c), which demands that "An objection must state whether any responsive materials are being withheld on the basis of that objection." The Court finds that there was no violation of Rule 34 necessitating further discovery. Remington repeatedly stated that the Plaintiffs had all the responsive documents of which Remington was aware, a position that it reiterates throughout its brief. Given the untold number of previously litigated Model 700 Series cases, Remington's lack of knowledge of responsive documents strongly suggests that any such document are not, in fact, within Remington's control.

The Teagues' argument, in part, is premised in a distrust of Remington and its counsel, which it asks the Court to adopt. A substantial portion of their brief is devoted to demonstrating a pattern of discovery abuse on Remington's part. (Doc. 45 at 10–16, 31.) While it appears that Remington and/or its predecessor engaged in some ethically questionable conduct in cases throughout the 1980s and 90s, the Teagues cite to no recent cases involving malfeasance by Remington. (*See* Doc. 45 at 31.) The Court cannot approach everything filed by Remington

in this case with suspicion simply because Remington has a history of discovery abuse.

The Court therefore turns to the specific requests at issue.  Following the parties' leads, the Court addresses two categories of documents—the Suspension Order documents and the documents similar to those previously produced from the 1970s and 80s—rather than detailing each and every request and interrogatory.

**II.    Suspension Order**

The Teagues ask the Court to compel responses to various requests for documents and information related to the 1995 Suspension Order.   Relevant here are the Teagues' Requests for Production 88, 89, 90, 91, and 95; Interrogatories 1, 2, 3, and 4; and Requests for Admission 4, 5, 6, 7, and 8.

The Teagues seek information regarding the documents that were gathered in response to the Suspension Order.   (Doc. 45 at 22–24.)   More particularly, they ask the Court to compel Remington to produce a log of all documents gathered in response to the Suspension Order, suggesting that a log would have been created by Remington's outside counsel in the 1990s.   (Doc. 45 at 9–11.)   Remington contends that the Teagues have all discoverable documents and that if a log of Suspension Order documents had been created, the log "would have been drafted by lawyers hired by Remington decades ago" and would therefore be nondiscoverable work product.   (Doc. 49 at 20–21.)

-10-

In their reply brief, the Teagues argue that Remington must produce its log(s) because it failed to object on the basis of work product and to comply with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A). But Remington did not claim to be withholding a log; rather it said that it did not have a log and that, even if it did, that log would not be subject to discovery. This is not, as the Teagues suggest, proof that Remington is playing discovery games; it is only a rhetorical argument made to point out the impossibility of complying with the Teagues' request.

Moreover, the Teagues' arguments lose sight of what *this* case is about—an allegedly defective trigger assembly. This is not a case in which the behavior of Remington's agents and attorneys in the 1990s is especially relevant. The Teagues have essentially all of the information and documents that were produced to other Walker fire control plaintiffs, many of whom were successful in pursuing the theory of liability that the Teagues now pursue. Indeed, both their attorneys and their expert have represented that they possess all documents produced in a minimum of 50 Walker fire control cases. There is no reason to believe that the discovery sought would move the needle, even assuming that such discovery exists and could be produced. Thus, the Court agrees with Remington that it would not be "proportional to the needs of the case" to require Remington to attempt to find further responsive documents. Fed. R. Civ. P. 26(b)(1).

The Motion to Compel is **denied** as to Requests for Production 88, 89, 90, 91, and 95; Interrogatories 1, 2, 3, and 4; and Requests for Admission 4, 5, 6, 7, and 8.

### III.  Documents from the 1970s and 80s

The Teagues request certain specific materials, which they appear to believe were also gathered in response to the Suspension Order.   Relevant here are Requests for Production 92, 93, 94, 96, 97, 98, 99, 100, and 101 and Requests for Admission 2 and 3.

### A. Study to Analyze Safety & Safety Committee Minutes

The Teagues seek production of the conclusions of a study Remington conducted in the mid-1970s to determine the safety of the Walker fire control trigger assembly.   They argue that circumstantial evidence strongly suggests that Remington was aware that the assembly could misfire and that an alternative design would be safer.   (Doc. 45 at 25.)   Remington does not specifically address this request in its response brief.   It discusses the relevant requests for production (98 and 99), but it appears to misconstrue them as requests for committee minutes, a related matter which the Court also analyzes.   (Doc. 49 at 24.)

The Court finds that if there is any further documentation of a safety study of the Walker fire control assembly undertaken in the 1970s, those documents are discoverable.   Such documents would bear on the Teagues' claim for punitive

damages. The Teagues point to other documents discussing the study, which appears to have been undertaken in 1975–76, and it therefore appears likely that other documents did exist at that point in time. (Docs. 45-14 through 45-18.) Whether they can be found today is another matter. However, because Remington did not address safety study documents in its response brief, the Court does not assume that it has already searched for the records and come up short.

Overlapping with their request for results of the safety study, the Teagues ask the Court to compel production of minutes from meetings of Remington's Product Safety Subcommittee from December 5, 1975 to October 23, 1978. Remington counters that "there is no indication that this subcommittee met *and* recorded minutes in 1976 or 1977, and there is no way to go back in time forty-five years to find out one way or the other. . . . There is nothing else to produce." (Doc. 49 at 24.)

The Court cannot compel production of documents that cannot be produced. Remington is the only entity that could know of the existence of any such documents; if it were dishonest with the Teagues and the Court, there would be consequences when its dishonesty was discovered. But there is no indication that Remington is proceeding in bad faith in this litigation, even assuming that it is appropriate for the Court to recognize a pattern of withholding evidence in years long past. Because these documents do not appear to exist, the Court cannot

-13-

compel their production.   Of course, if any such materials are subsequently found, they must be produced, as they are within the scope of discovery.

Recognizing that these 45-year-old materials may not be retrievable, the Court nonetheless **grants** the Teagues' motion as to the 1975–76 Walker fire control safety study.   The Court takes no view on whether any responsive documents exist, but in the event that they do, they must be produced on or before July 31, 2020.   If no such documents can be located, Remington shall provide a certification to that effect to the Teagues by the same date.

### B. Gallery Test Failure Investigation and Inspection Records

Finally, the Teagues request records related to Remington's tests of the Model 700 Series rifles.   Remington claims that it "ha[s] produced the available documents on this topic from this time-period," arguing that "[t]here is no valid basis to conclude that more information was reduced to writing in the 1970s, let alone that such material was maintained in the normal course and existed as of the mid-1990s collection effort."   (Doc. 49 at 25.)   Whether or not such documents were created in the first instance, they do not appear to exist at this point in time.

Again, the Court is without power to compel the production of nonexistent documents.   It therefore **denies** the motion as to records from Remington's gallery tests.

IT IS ORDERED that the motion to compel (Doc. 44) is GRANTED in part

and DENIED in part.   The motion is granted as to any documents arising from or discussing the 1970s safety study, subject to the qualification that the Court does not compel production of nonexistent documents.   Remington shall comply with this Order by July 31, 2020.   The motion is otherwise denied.

IT IS FURTHER ORDERED that the parties shall bear their own costs and fees associated with the motion.

DATED this 16th day of July, 2020.

*/s/ Dana L. Christensen*
Dana L. Christensen, District Judge
United States District Court