IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHARON TEAGUE and RANDALL TEAGUE, Individually, and in their official capacity as Co-Personal Representatives of the ESTATE OF MARK RANDALL TEAGUE,<br><br>Plaintiff,<br><br>vs.<br><br>REMINGTON ARMS COMPANY, LLC, REMINGTON OUTDOOR COMPANY, INC., SPORTING GOODS PROPERTIES, INC., E.I. EU PONT DE NEMOURS & COMPANY, DOES A TO K,<br><br>Defendant. | CV 18–184–M–DLC<br><br><br>ORDER |

Before the Court are Defendants' Motions in Limine (Docs. 42, 78, and 81), Motion to Strike (Doc. 105), and Motion for Summary Judgment (Doc. 39), as well as Plaintiffs' Motion for Partial Summary Judgment (Doc. 53).[1] The Court will first address Defendants' Motions in Limine, followed by Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Partial Summary Judgment, and finally Defendants' Motion to Strike.

---

[1] Defendants' remaining Motions in Limine (Docs. 67, 69, 71, 73, and 75) and Plaintiffs' Motions in Limine (Docs. 65, 77, and 83) will be addressed by the Court in a separate order.

1

## DISCUSSION

**Defendants' Motions in Limine.**

Defendants have filed three motions in limine to exclude the expert testimony of four of Plaintiffs' expert witnesses—Charles Powell, Dr. Mariusz Ziejewski, Dr. Charles Wigren, and Margaret Mayfield. (Docs. 42, 78, and 81.) Plaintiffs opposed each of these motions. (Docs. 46, 131, and 123.)

A motion in limine is a "procedural mechanism" through which questions regarding the admissibility of "testimony or evidence in a particular area" may be resolved before trial. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Such in limine rulings are preliminary, and the Court "may always change [its] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

Fed. R. Evid. 702 provides that a qualified witness may offer an expert opinion if:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

"There 'is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field;'" instead, "the court must determine

2

whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, and whether the opinion will help the trier of fact." *Trujillo v. Cnty. of Los Angeles*, 751 Fed. Appx. 968, 972 (9th Cir. 2018) (quoting *Santos v. Posadas De P.R. Assocs.*, 452 F.3d 59, 63 (1st Cir. 2006)).

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides a framework for determining the reliability of an expert witness's methodology.  509 U.S. 579 (1993).  The following factors are relevant to the *Daubert* analysis: "(1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Id.* at 592–94.  In making a *Daubert* determination, the Court is to act as "a gatekeeper, not a factfinder" and should "avoid excluding opinions 'merely because they are impeachable.'" *Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1218 (D. Mont. 2015) (citation omitted).

    **a. Motion to Exclude the Causation Opinion of Charles Powell**

Defendants contemporaneously filed their Motion in Limine to Exclude Causation Opinion of Plaintiffs' Liability Expert Charles Powell (Doc. 42) with their Motion for Summary Judgment (Doc. 39), discussed below.  In this motion in limine, Defendants argue that Powell's opinion testimony should be excluded

under *Daubert* because:

> (1) he failed to validate his causation opinion with any reliable scientific testing; (2) his claim that the shooting occurred in one of four 'unintended firing modes' is not supported by any admissible evidence; and (3) he has failed to rule out the plausible alternative explanation . . . that the manner of death was suicide.

(Doc. 43 at 7.)  Plaintiffs contend that Powell's causation opinion should not be excluded because Powell's testimony meets all of the *Daubert* factors.  (Doc. 46 at 11–27.)

Powell is a licensed professional engineer with forty years of experience in engineering failure analysis of products and accident investigation.  (Doc. 47-4 at 2, ¶ 5.5; *see also id.* at 47–51.)  Powell's opinion is based, in part, on his examination of the subject rifle, including "visual inspection, microscopic inspection, measurement, photography, function testing, trigger pull testing, safety lever testing, and x-ray computer tomography."  (*Id.* at 3, ¶ 5.4.)  Powell reviewed the coroner's report, photographs, and video.  (*Id.* at 43, ¶ 7.4.529.)  Powell has studied copious documents related to the particular trigger mechanism found in the subject rifle and has analyzed several exemplar rifles.  (*Id.* at 19–44, ¶¶ 7.4, 8.0.) Powell has also reviewed the opinions of Plaintiffs' other expert witnesses—Dr. Ziejewski, Dr. Wigren, and Margaret Mayfield—who all concluded that the cause of Mark Teague's death was not suicide.  (*Id.* at 43, ¶ 7.4.546–48.)

The Court finds that the causation opinion of Plaintiffs' expert Charles

Powell is admissible. While Defendants have attacked the methodology and opinions of Powell as having "glaring flaws," they have not demonstrated that Powell's opinion actually fails to meet any of the above mentioned *Daubert* factors. Rather, Defendants' disagreement with Powell's conclusions and methods are quintessential examples of issues going to the weight, rather than the admissibility, of Powell's testimony. *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) ("[I]ssues regarding the correctness of his opinion . . . are a matter of weight, not admissibility."). Defendants' Motion in Limine to exclude the opinion testimony of Charles Powell (Doc. 42) is DENIED.

### b. Motion to Exclude the Opinion Testimony of Dr. Mariusz Ziejewski and Dr. Charles Wigren

Defendants moved to exclude the opinion testimony of Dr. Mariusz Ziejewski and Dr. Charles Wigren (Doc. 78) pursuant to Fed. R. Evid. 702 and *Daubert*. (Doc. 80 at 5–6.) Defendants argue that Dr. Ziejewski's methodology is novel—"a test methodology that apparently has never been used by anyone else, anywhere, at any time"—and therefore unreliable and not allowable. (Doc. 80 at 5.) Defendants then argue that Dr. Wigren's opinion is unreliable both because it is based, at least in part, on the opinion of Dr. Ziejewski and because it is "flatly contradicted by the very treatise on which he relies." (*Id.* at 18.)

Dr. Ziejewski is a biomechanical engineer with expertise in human body biomechanics who offered an expert opinion as to "whether or not under known

facts Mark Teague could have pulled the trigger of the 270 Remington Model 700 Rifle." (Doc. 47-5 at 1–2.) Part of Dr. Ziejewski's analysis included the use of "gun-range testing" wherein Dr. Ziejewski fired rounds of ammunition from an exemplar rifle into cotton t-shirts at various distances from the muzzle to compare the presence of "stippling or tattooing" on the t-shirts with Mark Teague's face—which did not have any stippling or tattooing. (*Id.* at 6.) The conclusion reached by Dr. Ziejewski is that the muzzle of the rifle that killed Mark Teague was at least eight inches away from Mark's face and "Mark Teague could not have reached the trigger of the subject rifle with 8-inch muzzle-to-face distance." (*Id.* at 11.)

Defendants challenge Dr. Ziejewski's qualifications and basis for his methodology, pointing out that Dr. Ziejewski is admittedly "not an expert in any aspect of firearms" nor "gunpowder residues or stippling testing." (Doc. 80 at 8.) Defendants argue that the "t-shirt test" developed and used by Dr. Ziejewski is not reliable because it has never been validated and does "not test for whether such particles will produce the punctate abrasions on skin known as stippling or tattooing." (*Id.* at 8–11.) Defendants offer evidence positing that "stippling or tattooing on skin is not caused by gunpowder 'burns' . . . [but] by punctate abrasions from unburned gunpowder particles." (*Id.* at 8.)

Plaintiffs contend that Dr. Ziejewski is qualified to provide the expert opinion offered and that his "methods are substantively no different that the

6

methods used by [firearms experts]." (Doc. 131 at 15–26.) Plaintiffs argue that Dr. Ziejewski has experience "in evaluating the presence and kinetics of particles in propellant gases" and that the methods for "testing for particles in propelled gases" is "analogous to the test methods he used here." (*Id.* at 16–17.) Plaintiffs also contend that Dr. Ziejewski's "expertise in evaluating impact on viscoelastic surfaces of the human body, including skin[,] . . . provides him the expertise to determine what type of material would serve as an adequate target." (*Id.* at 17.) Lastly, Plaintiffs disagree with Defendants' framing of the t-shirt test as "novel" and instead argue that this methodology follows that used by firearms experts Dr. Vincent DiMaio and Rick Wyant and is an "appropriately reliable, well accepted, and well used method." (*Id.* at 25.)

Dr. Wigren is a licensed medical doctor boarded in Anatomic Pathology and Forensic Pathology who offered an expert opinion as to the cause and manner of Mark Teague's death. (Doc. 47-6 at 1.) Dr. Wigren's analysis included assessment of the "[p]resence of soot, absence of stippling, injuries, and distance," "Kronlein shot and gunshot trajectory," and suicide risk factors in adolescents. (*Id.* at 4–10.) Dr. Wigren concluded that Mark Teague's death was not a suicide but instead was an "accident." (*Id.* at 11.)

Regarding Dr. Wigren's opinion, Defendants argue his reliance on Dr. Ziejewski's t-shirt testing renders Dr. Wigren's analysis unreliable. (Doc. 80 at 6.)

Additionally, Defendants point to one of the sources cited by Dr. Wigren, the text *Gunshot Wounds* by Dr. Vincent DiMaio, and claim that DiMaio's conclusions in that treatise "flatly contradict" Wigren's conclusions. (*Id.* at 18.) Specifically, Dr. Wigren "relies on the DiMaio text on *Gunshot Wounds* for the proposition that contact wounds of the head do not usually produce soot on the skin surrounding an entrance." (*Id.*) Defendants argue that this conclusion ignores Dr. DiMaio's statement that:

> Incomplete-contact wounds are most often seen in self-inflicted contact wounds of the head due to long arms, i.e., rifles and shotguns. In these cases, a zone of *blackened and seared skin* extends downward from the entrance. The most probable cause for the appearance of this wound is a momentary break in contact between the muzzle and skin along the lower margin of the barrel as the victim reached for the trigger with one hand while holding the muzzle against the skin with the other hand.

(*Id.* at 19 (emphasis added).)

As discussed above, Plaintiffs responded to Defendants' arguments on Dr. Ziejewski's "t-shirt test" methodology. In addition, Plaintiffs contend that Dr. Wigren's opinion is not contradicted by the Dr. DiMaio treatise. (Doc. 110 at 10.) Plaintiffs distinguish between Dr. DiMaio's statements on "blackened and seared skin" and the "soot" that Dr. Wigren is discussing. (*Id.*)

Defendants again raise arguments that are best reserved for impeachment during trial through cross-examination or contrary evidence. Defendants' challenges do not demonstrate a clear lack of reliability in the methodology used

by Plaintiffs' experts, but rather attempt to undermine Plaintiffs' experts with Defendants' own understanding or perspective of the witness's area of expertise. Accordingly, Defendants' Motion in Limine (Doc. 78) is DENIED as to the opinion testimony of both Dr. Ziejewski and Dr. Wigren.

### c. Motion to Exclude the Opinion Testimony of Margaret Mayfield

Defendants also moved to exclude the opinion testimony of Margaret Mayfield (Doc. 81) on the basis that "she lacks the qualifications and experience to offer opinion testimony that (1) Mark Teague did not commit suicide and (2) Mark Teague did not have risk factors suggesting he was at risk for suicide," and/or (3) used unreliable methodology. (Doc. 82 at 2, 6–10.)

Mayfield is a Licensed Clinical Social Worker who offered an expert opinion "as to whether Mark Teague had risk factors associated with suicide, exhibited warning signs of suicide, and whether he committed suicide on November 3, 2015." (Doc. 47-8 at 1.) Mayfield relied on her review of various materials, including: deposition transcripts and video statements of Matthew, Randall, and Sharon Teague; video statements of Breanna Johnson; school records; Mark's autopsy report; Mark's medical records; and text messages from the month prior to Mark's death. (*Id.* at 1–2.) Mayfield also spoke with Mark's best friend, assistant football coach, parents, principal, and brother. (*Id.* at 2.)

Defendants argue that Mayfield is not qualified because she "has no

9

background or training in determining the cause or manner of a person's death" and "failed to establish that her technique used in this case of completing the Columbia Risk Assessment *for* Mark (after his death) and then interpreting her own answers . . . was appropriate and generally accepted." (Doc. 80 at 2, 5.)

Plaintiffs respond that Mayfield's curriculum vitae demonstrates her qualifications. (Doc. 123 at 3.) Mayfield currently works as the Assessment and Referral Coordinator at St. Patrick Hospital where she carries out and assists with psychiatric assessments, including for suicide risk (Doc. 47-8 at 1, 11), regularly sees and works with individuals who have been assessed for and/or have attempted suicide (Dep. Tr. at 36:17–37:1–8, Doc. 82-2), and provides training to Missoula primary care doctors on how to assess for suicide (*id.* at 183:3–9). Plaintiffs also state that Mayfield employed the same "process she uses in her job everyday" to determine whether Mark Teague was suicidal.

As with all expert testimony, at trial, the proponent will be required to lay an adequate foundation and move to qualify the witness as an expert, any party may have the opportunity to object, and the Court must make a reliability determination on the record. *See United States v. Valencia-Lopez*, 971 F.3d 891, 899 (9th Cir. 2020). Defendants' argument regarding the methodology employed go to weight and are best addressed through cross-examination or contradictory evidence. Accordingly, Defendants' Motion in Limine to exclude the opinion testimony of

Margaret Mayfield (Doc. 81) is DENIED.

**Defendants' Motion for Summary Judgment.**

This Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In ruling on a motion for summary judgment, the Court is to draw "all justifiable inferences" in favor of the non-moving party and "the evidence of the non movant is to be believed." *Anderson*, 477 U.S. at 255.

Defendants seek to resolve Plaintiffs' claim by arguing that Plaintiffs cannot meet their burden to prove strict product liability because Plaintiffs have failed to provide sufficient expert testimony on the issue of causation. (Doc. 41 at 4–5.) Defendants claim that Charles Powell is the only one of Plaintiffs' experts to offer an opinion as to "(1) whether the subject rifle was defective and (2) whether any such defects caused the death of Plaintiffs' decedent." (*Id.* at 4.) Defendants allege that Powell's expert opinion is inadmissible under the Federal Rules of

11

Evidence because it "is based on pure speculation" and "fail[s] to rule out the logical alternative explanation that Mark's death was caused by the rifle's trigger being pulled or depressed" as required under Montana law.[2] (*Id.* at 5.)

Plaintiffs contend that summary judgment is not appropriate because "as a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case," citing *Proven v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996), and here, Plaintiffs have presented credible evidence that the defective design was the cause of Mark Teague's death, including the expert opinions of Charles Powell, Dr. Mariusz Ziejewski, Dr. Carl Wigren, and Margaret Mayfield. (Doc. 48 at 5–11.)

Strict product liability under Montana law requires a plaintiff to prove: (1) the product was in a defective condition that rendered it unreasonably dangerous; (2) the defect caused the accident; and (3) the defect is traceable to the defendant. Mont. Code Ann. § 27-1-719 (2021); *Brown v. North America Mfg. Co.*, 576 P.2d 711, 716 (Mont. 1978). Causation may be proven through direct or circumstantial evidence. *Brandenburg v. Toyota Motor Sales, U.S.A., Inc.*, 513 P.2d 268, 274 (Mont. 1973).

The Court finds that Defendants have failed to meet their burden for

---

[2] Defendants cite to *Brothers v. General Motors Corp.*, 658 P.2d 1108, 1110 (Mont. 1999), for the proposition that a plaintiff's failure to "negate other causes of the accident" is proper grounds to award summary judgment in favor of a defendant. (*Id.* at 7.)

summary judgment. Plaintiffs have put forth adequate evidence to raise a genuine issue of material fact as to whether Mark Teague's death was caused by the defective design of the trigger assembly in his Remington Model 700 rifle or by suicide. Defendants argue that "Plaintiffs have conflated their burden of providing . . . evidence to support the essential causation element . . . with the disputed manner of Mark's death." (Doc. 51 at 3.) The Court is unpersuaded by this distinction without a difference and finds that the cause of Mark Teague's death is addressed by the opinions of Plaintiffs' experts.

Accordingly, Defendants' Motion for Summary Judgment (Doc. 39) is DENIED.

**Plaintiffs' Motion for Partial Summary Judgment.**

Plaintiffs move for summary judgment on Defendants' affirmative defenses. (Doc. 53.) In their Response to Plaintiffs' Motion for Partial Summary Judgment, Defendants agreed to withdraw their affirmative defenses of contributory negligence, intervening/superseding cause, and assumption of risk. (Doc. 57 at 3.) Defendants maintain those affirmative defenses pertaining to claims for punitive damages, misuse, and immunity under 15 U.S.C. § 7903(5)(A)(v). Defendants also maintain that they "must be allowed to offer evidence that any claimed defect in the rifle was not a proximate cause of the rifle firing," or in other words, that Mark Teague committed suicide. (*Id.* at 4.)

Under Montana law, there are only two affirmative defenses allowable in cases of strict product liability: (1) assumption of risk, and (2) unreasonable misuse. Mont. Code Ann. § 21-1-719(5); *Speaks*, 118 F. Supp. 3d at 1224. Accordingly, any affirmative defense attempting to argue contributory negligence or intervening/superseding cause are not allowable. *See Bell v. Glock*, 92 F. Supp. 2d 1067, 1069 (D. Mont. 2000); *see also Lutz v. National Crane Crop.*, 884 P.2d 455, 463 (Mont. 1994).

Defendants' misuse affirmative defense is permissible if the misuse was not reasonably foreseeable. *Kenser v. Premium Nail Concepts, Inc.*, 338 P.3d 37, 43 (Mont. 2014). Defendants present the defense that "Mark misused his loaded rifle either by: (1) placing and holding its muzzle against his forehead with the safety in the 'FIRE' position and pulling or depressing the trigger . . . , or (2) attempting to unload the rifle with the safety in the 'FIRE' position while holding the muzzle of the rifle against his forehead" and that either misuse is unforeseeable and unpreventable by Defendants. (Doc. 57 at 9–10.)

Plaintiffs argue that Defendants have failed to meet their burden of proving any alleged misuse was not reasonably foreseeable. (Doc. 60 at 8.) Plaintiffs further argue that "[i]nadvertent, injurious discharges have happened time and time again" and therefore such "misuse" is reasonably foreseeable. (*Id.* at 10.)

Plaintiffs have failed to meet their burden of proving that no genuine issue of

14

material fact exists regarding whether any alleged misuse was foreseeable. Whether or not the alleged misuse—as Defendants have characterized it—was reasonably foreseeable is a question best left to the jury in this case.

Next, the Parties argue at length about the permissibility of so-called "empty-chair" defenses in strict product liability cases. Empty-chair defenses are those that attempt to attribute fault to an unnamed third-party. Such defenses are prohibited under Montana law. *See Plumb v. Fourth Jud. Dist. Court*, 927 P.2d 1011 (Mont. 1996); *Newville v. State Dep't of Family Servs.*, 883 P.2d 793 (Mont. 1994); *Lutz*, 884 P.2d 455. However, this Court has previously stated that "the facts of the incident itself are admissible" and "[a]ny such reasonable inference that can be argued from those facts is permissible, so long as it goes to the negation of cause, not to its attribution to some third party." *Bell*, 92 F. Supp. 2d at 1071. Accordingly, Defendants here are permitted to introduce evidence of Mark Teague's conduct as it "relates to what happened in the incident" or to rebut Plaintiffs' claim that the alleged defective design caused Mark Teague's death. *Id.* Defendants are not permitted, however, to argue that Mark Teague was contributory negligent or an intervening/superseding cause of his own death.

The Court finds that Defendants' remaining defense of immunity under 15 U.S.C. §§ 7902(a) and 7903(5)(A)(v) is not allowable because it attempts to argue that Mark Teague caused his death through a "volitional act that constituted a

15

criminal offense," thereby making Mark's conduct "the sole proximate cause" of his resulting death.[3] As discussed above, such an intervening/superseding cause defense is prohibited under Montana law.

Lastly, Defendants have maintained their punitive damages affirmative defenses. These defenses include that "Plaintiffs' claims for punitive damages are barred by the Equal Protection, Due Process, Excessive Fines, and Double Jeopardy provisions of the United States and Montana Constitutions," and that "Defendants were not egregious, willful, grossly negligent, fraudulent, acting with actual malice, or reckless and they cannot be liable for or responsible for exemplary or punitive damages," among other arguments. (Doc. 29 at 19–22.) Plaintiffs argue that Defendants have failed to meet their burden of proving these defenses but provide no other argument against the defenses. (Doc. 60 at 13–14.) Defendants have put forth their arguments in support of these affirmative defenses and Plaintiffs have failed to demonstrate that no genuine issues of material fact exist as to those defenses at this time.

Accordingly, Plaintiffs' motion (Doc. 53) is GRANTED in part and DENIED in part. Summary judgment is granted for Plaintiffs on Defendants' affirmative defenses of contributory negligence, intervening/superseding cause,

---

[3] Under 15 U.S.C. §§ 7902(a) and 7903(5)(A)(v), a seller of a firearm is immune from a "civil liability action . . . brought in any Federal or State court" where "the discharge of the [firearm] was caused by a volitional act that constituted a criminal offense."

immunity under 15 U.S.C. §§ 7902(a) and 7903(5)(A)(v), and assumption of risk, but denied for all remaining affirmative defenses—unreasonable misuses and the punitive damages defenses.

### Defendants' Motion to Strike Untimely Declaration of Jonathyn Priest

On July 20, 2020, Plaintiffs filed the declaration of Jonathyn Priest (Doc. 66-6) as an exhibit to their brief in support of their Motion in Limine to exclude the expert opinion of Derek Watkins (Doc. 66).[4] Priest's declaration includes specific criticisms of the methodology and opinion of Defendants' expert Derek Watkins. (Doc. 66-6 at 2–4, ¶ 16–27.)

Defendants move to strike the declaration of Priest as untimely under Fed. R. Civ. P. 26(a)(2)(D). (Docs. 105, 106 at 4.) Defendants argue that under Fed. R. Civ. P. 37(c)(1), "Priest's late declaration *must* be stricken" because Priest's declaration must have been submitted either (1) within thirty days of Watkins's May 14, 2020, deposition, or (2) no later than ninety days before the date set for trial. (Doc. 106 at 4–6.)

Plaintiffs contend that "Priest's [d]eclaration provides no new areas of opinion or expertise and is therefore not an expert disclosure" but instead provides "context" and "support" to Plaintiffs' motion and therefore expert disclosure was not warranted or, alternatively, failure to do so was harmless. (Doc. 111 at 4–5.)

---

[4] Plaintiffs' Motion in Limine (Doc. 65) will be addressed by this Court in a subsequent order.

Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26(a)(2)(D) requires a party to make disclosures of expert testimony in accordance with "the times and in the sequence the court orders." This Court's order required that any expert rebuttal opinions be disclosed within thirty days of the disclosure of the opinion it was intended to rebut, in accordance with Fed. R. Civ. P. 26(a)(2)(D)(ii). (Doc. 34 at 7, ¶ 10.) Accordingly, Plaintiffs had until June 13, 2020—thirty days after Watkins's deposition—to disclose the declaration of Priest, if characterized as an expert rebuttal.

Alternatively, if Priest's declaration were categorized as a supplementation of an incomplete expert report, the Court allowed for such supplemental disclosures to be filed "no later than ninety (90) days before the date set for trial." (*Id.* at 8, ¶ 11.) The date set for trial at the time of the Court's order was October 5, 2020. (*Id.* at 3, ¶ 1.) Accordingly, Plaintiffs had until July 7, 2020, to file Priest's declaration.

The Court finds that Priest's declaration contains new areas of expert testimony not found in Priest's initial expert report.[5] Accordingly, the declaration

---

[5] For example, in his disclosure, Priest discusses and criticizes Watkins's use of elimination protocol or root cause

is either an expert rebuttal opinion or a supplemental disclosure. Under either characterization, Plaintiffs' disclosure of Priest's declaration was untimely because it was not filed until July 20, 2020. Accordingly, the Court GRANTS Defendants' motion (Doc. 105) and strikes the declaration of Jonathyn Priest (Doc. 66-6) as untimely.

However, the Court maintains its original direction to the parties that an expert may testify as to any information reasonably contained within their report. In his initial report, Priest does include some criticism of Watkins's report, stating "[t]he report fails to identify the testing conducted or its methodology" and "the presence of biological material on the Remington Model 700 rifle was not confirmed using any known testing methodologies," for example. (Doc. 66-5 at 9, ¶¶ 38, 39.) The Court will reserve ruling at this time on the extent to which Priest may testify on the topic of Watkins's methodology and opinions.

Accordingly, IT IS ORDERED that Defendants' Motions in Limine (Docs. 42, 78, and 81) are DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 39) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary

---

analysis; however, Priest did not include this particular criticism in his initial expert report. (*Compare* Doc. 66-5 at 9, ¶¶ 38–39, *with* Doc. 66-6 at 2–4, ¶¶ 17–27.)

Judgment (Doc. 53) is GRANTED in part and DENIED in part. Summary judgment is granted in favor of Plaintiffs on Defendants' affirmative defenses of contributory negligence, intervening/superseding cause, immunity under 15 U.S.C. §§ 7902(a) and 7903(5)(A)(v), and assumption of risk. Summary judgment is denied on Defendants' affirmative defense of unreasonable misuses and those defenses pertaining to punitive damages.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (Doc. 105) is GRANTED.

DATED this 1st day of November, 2022.

_____
Dana L. Christensen, District Judge
United States District Court